THEODORE STANFIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT, AND CONSOLIDATED CASES.

Docket Nos. 3076, 4056.[1] Promulgated October 14, 1927.

1. The Board has no jurisdiction to redetermine tax liability where the Commissioner has made no final determination of a deficiency.

2. The accounts of the petitioners held to have been kept on the accrual basis. Income held to have been properly returned on such basis.

---

[1] Proceedings in which the following named persons were petitioners, bearing the following docket numbers, were consolidated with the above-entitled proceeding for hearing and decision and are decided herewith: Otto Sussman, Nos. 3077 and 9190; Siegmund Adler, Nos. 3078 and 4059; Moritz Roos, Nos. 3079 and 4060; Harold K. Hochschild, Nos. 3080 and 4057; Berthold Hochschild, Nos. 3081 and 4058; Carl M. Loeb, Nos. 3082, 9191, and 9192; Julius Loeb, Nos. 3083 and 4061; Henry V. Putzel, No. 4053; Hans Bernstorff. No. 4054; Henry Bruere, No. 4055.

*Joseph B. Cotton, Esq., George M. Morris, Esq.,* and *Samuel Brenner, Esq.,* for the petitioners.

*A. R. Marrs, Esq.,* for the respondent.

### FINDINGS OF FACT.

#### General findings as to all of the petitioners.

During all of 1916, for many years prior thereto, and during all the years in question (except as otherwise hereinafter specified in separate findings as to certain of the taxpayers), the taxpayers were officers, directors and/or employees of the American Metal Co., Ltd., hereinafter referred to as the Metal Company, and having its principal office and place of business at 61 Broadway, in New York City, N. Y.

The Metal Company was organized under the laws of the State of New York by the late Jacob Langeloth and by Berthold Hochschild in 1887, and has ever since had its principal office in the city of New York.

At the time of its incorporation a contract was entered into between said Langeloth and said Hochschild and the Metal Company whereby said Langeloth and Hochschild drew nominal specified sums yearly and were to be paid for their services in building up the business in the following manner: After paying or setting aside 6 per cent yearly, as dividends on the outstanding stock of the Metal Company, a sum not exceeding 40 per cent of the remaining yearly net profits was to be paid to the said Langeloth and Hochschild as additional compensation for their services and the balance was to be applicable for dividends or other corporate purposes. These payments for services were and are called tantiemes. This contract has been a continuous one from 1887 to the present time and was entered into pursuant to an agreement with the stockholders. .

The Metal Company from its inception has always carried on the business of buying and selling ores, concentrates and metals, and has been a large dealer therein. It has also had subsidiary companies and carried on through such companies mining and treatment operations, both in the United States and in foreign countries. Its business has been conducted all over the world and its officers and managers have been the men who have enlarged its business and have been responsible for and contributed to its financial success. These officers and managers knew in a general way from month to month approximately what the net profits of the Metal Company were for the preceding month, but its actual net profits were never ascertained until after the close of each fiscal year. When so ascertained for the year, such net profits were set up on the books of the

Metal Company, the tantieme part thereof being charged to operating expenses for the fiscal year and simultaneously being credited to the tantieme recipients, in the percentages to which they were severally entitled, upon the books of the Metal Company, with interest allowed thereon from the close of the fiscal year or period.

After the close of the fiscal year and at the stockholders' meetings when directors were elected, the acts of the officers of the Metal Company in paying the tantiemes and charging the same to operating expenses were usually, but not always, formally approved. At no time in the history of the Metal Company has any dissent or disapproval been made by any stockholder of the Metal Company of the acts of the officers in fixing and paying said tantiemes and charging the same as an operating expense.

As the business in the earlier years grew and was extended, Langeloth and Hochschild permitted other officers, managers and employees to participate with them in such tantiemes. During the life of said Langeloth, who died in August, 1914, he and said Berthold Hochschild designated each year what persons should participate and the percentages in which they should participate in these yearly tantiemes. The men thus permitted to participate were those whose work and efforts were in part responsible for and who contributed to the financial success of the business. Each participant, including each of the taxpayers, knew during any given period that he was a participant in the tantiemes and the percentage of such net profits over and above the dividends to which he was entitled for such period. These tantieme recipients during the years in controversy received nominal salaries and relied upon the successful operation of the Metal Company and the payment of these tantiemes for compensation for their services to the Metal Company.

Prior to 1921 the Metal Company had very few stockholders—not to exceed 34 in number—and these were for the most part its officers, managers and employees and their relatives and associates in the United States and abroad.

During all the years in which the Metal Company has been in existence, including the years in controversy, these tantieme recipients have been in entire control of the management of the corporation and they constituted its board of directors and with their relatives and associates have been in control of the stock of the Metal Company, have directed its business and dominated its policies.

For the years 1920 and 1921 no tantiemes were paid because the net earnings of the Metal Company were too small, after taking care of the regular dividends, to warrant the payment of the same.

During the years 1916 to 1919, both inclusive, all of the above taxpayers (except Theodore Stanfield, whose right to tantiemes ex-

pired July 1, 1917, and Berthold Hochschild, whose right to tantiemes expired December 31, 1918) had these tantieme contracts of employment with the Metal Company pursuant to which contracts the taxpayers collectively were entitled to receive and did receive during said years a percentage of the net profits, after dividends, of the Metal Company's business for each said fiscal year. This method of payment to officers, directors and employees of the Metal Company had been in vogue as aforesaid since the year 1887.

From its incorporation to June 30, 1916, the fiscal year of the Metal Company closed on June 30 of each year.

As an integral part of the system of accounting adopted and in use during the years in question by the Metal Company and since the inception of the Metal Company, it kept the accounts for the individual tantieme recipients, including the above-named taxpayers, in which were credited the tantiemes to which they were entitled, respectively, and in which were entered all other sums to which they were entitled from the Metal Company or which they deposited with the Metal Company to their credit. The Metal Company acted as banker for said tantieme recipients, selling stocks, bonds and other properties for them and crediting their accounts with the proceeds thereof and also purchasing stocks, bonds and other properties for them and debiting their accounts with the amount of such purchases. Dividend checks, interest coupons, rent and other income items were deposited by these taxpayers with the Metal Company and credited to their account.

These accounts were kept in the books of account of the Metal Company, but in a separate ledger containing only the personal accounts of the officers, directors, and other employees. Each debit or credit entry set out detailed information as to its source and purpose. Such details were of no use to the Metal Company but were made for the use and benefit of the individuals, who used such accounts as their own and as a basis for preparing income-tax returns. Such accounts were kept in such detail and the use of the facilities of the Metal Company in purchasing and selling securities, collecting checks and interest coupons and paying personal bills with that company's checks were permitted to these taxpayers for the purpose of saving the time which they would otherwise devote to such purposes and conserving such time for use in the business of the Metal Company. These taxpayers kept no books of account other than the ones kept for them by the Metal Company. The salaries of these taxpayers, dividends declared by the Metal Company upon stock owned by them and interest upon its indebtedness to them were credited in these personal accounts as they accrued.

The usual practice was to allow interest to the tantieme recipients upon their tantiemes and credit balances.

The tantieme recipients controlling the Metal Company agreed, in the latter part of 1916, to change its fiscal year to a calendar year basis, such change to take effect from July 1, 1916. Instructions were given to the accounting department accordingly. A formal resolution confirming said change in the fiscal year was adopted by the directors on April 6, 1917.

In April, 1917, the books of the Metal Company were closed as of December 31, 1916, and the tantiemes to which the tantieme recipients, including the above-named taxpayers, were entitled for the last six months of 1916 were determined as soon after December 31, 1916, as was convenient in the ordinary routine of the Metal Company's business.

On or about April 6, 1917, when the exact amounts in dollars and cents of the tantiemes for the respective tantieme recipients, including the above-named taxpayers, for the last six months of 1916 were determined, the same were credited to the accounts of such tantieme recipients upon the books of the Metal Company as of December 31, 1916, and interest at the rate of 2½ per cent was allowed upon said amounts from December 31, 1916, to December 31, 1917, and thereafter at the rate of 5 per cent per annum, and simultaneously therewith (on or about April 6, 1917) said tantiemes were entered upon the books of the Metal Company as an operating expense thereof for said last six months of 1916.

By reason of the change in the fiscal year it became necessary to determine what disposition was to be made of the tantiemes for the last six months of 1916 for tax purposes, both as to the Metal Company and as to the tantieme recipients, including the above-named taxpayers.

Upon inquiring of the then collector of internal revenue for the second district of New York, the Metal Company was instructed by him to accrue such tantiemes on its books to December 31, 1916, and to treat the same as additional operating expense for the calendar year 1916. The Metal Company acted accordingly and filed an amended return for said calendar year on or about April 12, 1917, setting up the amounts of said tantiemes, including the tantiemes of the above-named taxpayers, accrued from June 30, 1916, to December 31, 1916, as additional operating expenses for the said calendar year 1916.

Said amended return was with full knowledge of the facts duly accepted by the Government, duly audited and the amounts of said tantiemes, including the tantiemes paid to the above-named taxpayers were finally allowed by the Government as a proper item of expense of the Metal Company for the year 1916.

Said collector of internal revenue also directed said tantieme recipients including the above-named taxpayers to amend their individual income returns for the year 1916, and to include therein said tantiemes for the last six months of 1916, so entered to their credit on the books of the Metal Company as of December 31, 1916, and each of the tantieme recipients, including the above-named taxpayers, excepting only one thereof, namely, Henry Bruere, duly complied with said direction, and on or about April 12, 1917, filed their amended income-tax returns for 1916, included therein their tantiemes for the last half of 1916, and paid the taxes shown to be due thereon.

The method of the Metal Company of paying tantiemes for the last six months of 1916 and for subsequent years was identical with that employed by it in paying tantiemes from the year 1887 down to date, and the only change involved was that the fiscal year of the Metal Company was changed from the basis of July 1–June 30 to the calendar year in the manner hereinbefore stated.

For each of the calendar years 1917, 1918, and 1919 the Metal Company credited to all of the taxpayers upon its books the percentages of the net profits to which they were respectively entitled as it had always theretofore done, and duly debited the same as operating expenses of the Metal Company for each of such years, and its action in so doing as to such operating expenses, from year to year, has never been questioned by the Commissioner of Internal Revenue.

During all the years in question the Metal Company had much more than sufficient cash and liquid assets to pay in full all of its obligations as they matured, and for the last 25 years the Metal Company has been in financial position to pay in full all of such tantiemes at any time.

All amounts credited to the respective taxpayers have been subject to withdrawal by them at any time during banking hours. Either before or after the close of the taxable year and before the exact amount of the tantieme had been determined, the taxpayers were at liberty to withdraw an amount approximating the tantieme earned. Occasionally they have overdrawn their accounts. This has been permitted as an advance against such tantiemes. Other employees were not permitted to overdraw their accounts.

The books of the Metal Company have always been kept upon an accrual basis. The personal accounts of the taxpayers upon the books of the Metal Company were kept principally upon an accrual basis, some items being entered when received or paid rather than when accrued.

The books of the Metal Company, including the personal accounts of the taxpayers upon such books, were kept open at the end of each year until the profit for the year could be ascertained. The tantieme payments were then entered on such books as of the last day of the year.

Daniel C. Roper was Commissioner of Internal Revenue from September, 1917, to March 31, 1920. William M. Williams was Commissioner from April 1, 1920, to May 27, 1921. Since May 27, 1921, David H. Blair has been the Commissioner.

### Separate findings as to Theodore Stanfield.

The taxpayer, Stanfield, is a citizen of the State of New York, and resides at No. 151 Central Park West, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Stanfield from the Metal Company for services rendered during that period was $248,698.87, and for the year 1917 the tantieme earned by him from the Metal Company was $83,842.90. Stanfield left the employ of the Metal Company on June 30, 1917.

On or about April 12, 1917, Stanfield duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 and upon said tantieme Stanfield paid to the Government a tax at the rates prescribed for 1916, of $28,430.71.

Thereafter, in March, 1918, Stanfield filed his income-tax return for 1917 wherein he included his tantieme for that year in the amount of $83,842.90 and paid to the Government the tax thereon provided by law.

Thereafter, in March, 1919, Stanfield filed his income-tax return for the calendar year 1918 and paid to the Government the tax thereon at the rates prescribed by law. Stanfield did not include in his said 1918 income-tax return any tantieme for the reason that he left the service of the Metal Company on June 30, 1917, and therefore earned and received no tantieme for 1918.

On or about March 14, 1919, Stanfield voluntarily sent to the collector of internal revenue for the second district of New York a letter enclosing his check for $1,741.88 on account of certain income for 1917 resulting from Stanfield's accruing certain interest items in and for that year. This check was acknowledged by the said collector by letter dated March 18, 1919, advising that it was necessary for Stanfield to file an amended return for 1917, taking credit thereon for the amount of tax already paid and showing the amount of tax still due, and advising further that the check would be held until receipt of the amended return.

Said check was duly deposited by the collector and paid on or about June 14, 1919, by the bank upon which drawn by Stanfield.

Prior to November 11, 1919, the Commissioner of Internal Revenue caused an inspection and audit to be made of Stanfield's income-tax return for 1916. As the result thereof, he caused an assessment of $1,429.99 to be made against Stanfield in 1919 as additional taxes for 1916, which sum Stanfield paid to said collector of internal revenue for the second district of New York on or about November 11, 1919.

Thereafter, the Commissioner caused an investigation and audit to be made of Stanfield's income-tax liability for the years 1917 and 1918, based upon the report of the supervising internal revenue agent at New York City, dated January 27, 1920, and, on May 18, 1920, there was addressed to Stanfield, who prior thereto and during the years 1917 and 1918 was known as Theodore Sternfield, a letter from a Deputy Commissioner of Internal Revenue advising that an investigation of Stanfield's income-tax liability for 1917 and 1918 based on said report indicated an additional tax of $2,272.86 for 1917 and $1,875.68 for 1918, a total of $4,148.54, and also advising Stanfield that such total additional tax would be entered on the next list sent to said collector of internal revenue for collection.

In and by said letter it was claimed that Stanfield had underpaid his 1917 income tax in the amount of $2,272.86 and had underpaid his 1918 income tax in the amount of $1,875.68.

In and by said letter to Stanfield nothing was said as to his action in including in his 1917 income-tax return the tanticme earned by him for the year 1917 nor was any mention made therein as to Stanfield not having included in his income-tax return for 1916 the tantieme earned by him from the Metal Company for the last half of 1916.

On or about May 19, 1920, by letter bearing that date and addressed to the Commissioner of Internal Revenue, Stanfield replied to the said letter of May 18, 1920, advising the Commissioner that as to his, Stanfield's, 1917 return he had previously found errors therein of underpayments aggregating $1,787.53 and that he had made payments which should be credited against the claim of additional tax liability for 1917 and requesting that instructions be given to collect an additional tax for 1917 of $485.34 only, and as to 1918 setting forth certain facts in reference to the claim of the Commissioner of additional tax liability for 1918 having no connection with the tantieme earned.

On or about February 1, 1921, the Bureau of Internal Revenue by letter dated February 1, 1921, and signed by a Deputy Commissioner wrote Stanfield with reference to his income taxes for 1917 and 1918 advising that on examination of his income-tax returns for 1917 and 1918, in connection with the report of the supervising

internal revenue agent at New York, dated January 27, 1920, indicated a further tax liability for 1917 of $485.34 and an overpayment for 1918 of $6.44, a net additional tax due for said years of $478.90, and advising that the assessment of such net additional tax would be entered on the next list sent to the collector of internal revenue for collection.

Thereafter, Stanfield duly paid to said collector of internal revenue for the second district of New York the net additional tax liability claimed in the amount of $478.90.

Thereafter, by letter dated March 16, 1923, and signed by E. W. Chatterton, Deputy Commissioner, Stanfield was advised that, as the result of a reaudit of his books of account and records, the aforesaid tantieme for the last six months of 1916 was held by the Commissioner's office to represent income to Stanfield for 1917 and stating that, since it was impractical to give Stanfield the usual 30-day notice provided by section 250(d) of the Revenue Act of 1921, the assessment would be made immediately and such assessment was accordingly made. Thereupon, agreeably to said letter and pursuant to law, Stanfield duly filed a claim for the abatement of said additional tax which was fixed by the Commissioner at $113,329.26.

The time within which Stanfield could have filed any claim for credit or refund pursuant to law on account of his having paid income taxes in the year 1917 on his tantieme for the last six months of 1916 expired on or before March 1, 1922.

The Commissioner refused to credit or refund Stanfield with the amount of $28,430.71, or any part thereof, representing the income tax paid to the Government by Stanfield in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Stanfield said credit or refund although requested so to do.

Thereafter, in the latter part of November, 1923, and as the result of a reaudit of Stanfield's income-tax return for the year 1917, Stanfield was advised by certificate of overassessment No. 520,086, signed by J. G. Bright, Deputy Commissioner, that the tantieme in the amount of $83,842.90 theretofore reported in his 1917 individual tax return as received by him from the Metal Company for the year 1917, was considered to be income to Stanfield for the year 1918 and not for 1917, and that $41,284.99 of the additional assessment for 1917 had been abated.

Stanfield never consented to or acquiesced in said shifts of his tantiemes for the last six months of 1916 and for the year 1917 and the adjustment of income tax resulting therefrom, but, on the

11340°—28——53

contrary, by appeal or protest dated on or about December 19, 1923, appealed to the Commissioner from and protested such shifts of his said tantiemes and the adjustments resulting therefrom.

On or about October 4, 1924, Stanfield, through his counsel, was accorded a hearing on his income-tax returns for 1916 to 1922 inclusive, by representatives of the then solicitor of internal revenue and thereafter the Commissioner approved the opinion of said solicitor on or about November 19, 1924, and denied the appeal or protest of said Stanfield.

By letter dated February 5, 1925, Stanfield was notified of the rejection of his claim for abatement of the additional assessment of $113,329.26, for 1917, except as to $896.70 thereof and except as to the amount previously abated. Stanfield filed his petition with the Board for a redetermination of the deficiency. The proceeding is known as Docket No. 3076.

Should the said shift of his tantiemes be sustained, pursuant to said certificate of overassessment No. 520,086, there would be an unpaid assessment against him for the year 1917 of $72,044.27. Said unpaid assessment, if Stanfield's appeal herein should be denied should be further reduced by $1,741.88, paid by Stanfield for 1917, to the collector of internal revenue on or about March 14, 1919, for which payment credit is not given in said certificate of overassessment. If Stanfield's appeals are denied, he should be entitled to a further credit of $896.70 as evidenced by letter from the Commissioner to Stanfield dated February 5, 1925.

Were it not for the statute of limitations contained in the Revenue Act of 1921, the Commissioner would have allowed Stanfield a further credit of $28,430.71 on account of his overpayment to the Government of 1916 income taxes in that amount.

By letter from the office of the Commissioner of Internal Revenue dated February 5, 1925, Stanfield was notified that an audit of his return for 1918 disclosed a deficiency in tax of $45,720.47. By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition in the proceeding known as Docket No. 3076 Stanfield asks a redetermination of such deficiency.

Under date of March 10, 1925, the Commissioner notified Stanfield of the determination of a deficiency in income tax for 1918 of $45,720.47, resulting in part from including as income in 1918 the tantieme of $83,842.90 earned in 1917. Stanfield filed his petition with the Board for a redetermination of the deficiency. The proceeding is known as Docket No. 4056.

*Separate findings as to Otto Sussman.*

The taxpayer, Otto Sussman, is a citizen of the State of New York, and resides at No. 300 West End Avenue, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Sussman from the Metal Company for services rendered during that period was $319,755.69, for the calendar year 1917 the tantieme earned by him from the Metal Company was $215,596.04, for the calendar year 1918 the tantieme earned by him from the Metal Company was $28,534, and for the calendar year 1919 the tantieme earned by him from the Metal Company was $125,194.09.

On or about April 12, 1917, Sussman duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 and upon said tantieme Sussman paid to the Government a tax at the rates prescribed for 1916, in the amount of $38,370.68.

Thereafter, in March, 1918, Sussman filed his income-tax return for 1917 wherein he included his tantieme for that year in the sum of $215,596.04 and paid to the Government the tax thereon provided by law.

Thereafter, in March, 1919, Sussman filed his income-tax return for the year 1918 wherein he included as income to him for that year $28,534, being his tantieme for the year 1918, and in 1920 within the time provided by law, Sussman filed his income-tax return for the year 1919 wherein he included as income to him for that year his tantieme for the year 1919 of $125,194.09, on which sums Sussman paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

By letter dated March 16, 1923, addressed to Sussman and signed by E. W. Chatterton, Deputy Commissioner, Sussman was advised that, as the result of an audit of his books of account and records, the said tantieme for the last six months of 1916 was held by the Commissioner's Office to represent income to Sussman for the year 1917 and that, since it was impractical to give Sussman the usual 30 days' notice provided by section 250(d) of the Revenue Act of 1921, the assessment would be made immediately and such assessment was accordingly made. Thereupon, agreeably to said letter and pursuant to law, Sussman duly filed a claim for the abatement of said additional tax for 1917 which was fixed by the Commissioner at $169,789.85.

The time within which Sussman could have filed any claim for credit or refund pursuant to law on account of his having paid income taxes in the year 1917 on his tantieme for the last six months of 1916 expired on or before March 1, 1922. On or prior to Febru-

ary 17, 1922, Sussman knew that the Bureau of Internal Revenue contended that tantiemes credited to Julius Loeb for the last six months of 1916 were taxable income for 1917.

The Commissioner refused to credit or refund Sussman with the amount of $38,370.68, or any part thereof, representing the income tax paid by Sussman in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Sussman said credit or refund on account thereof although requested so to do.

Thereafter, in the latter part of October or early part of November, 1923, and as the result of a reaudit made of Sussman's income-tax return for the year 1917, he was advised by certificate of over-assessment No. 524,879, signed by J. G. Bright, Deputy Commissioner, that his tantieme of $215,596.04 and his salary of $6,000 reported by him in his 1917 income-tax return as received by him from the Metal Company for the year 1917 were considered to be income for the year 1918 and not for 1917, and that $118,106.25 of the additional assessment for 1917 had been abated. Notice and demand for payment of the unpaid assessment of $51,683.60 for 1917 were issued by the collector of internal revenue on November 9, 1923.

Sussman never consented to or acquiesced in the shifts of his tantiemes for the last six months of 1916 and for the year 1917, and the readjustment of his income taxes resulting therefrom, but on the contrary by appeal or protest dated on or about November 16, 1923, appealed from and protested such shifts of his said tantiemes and said salary and the adjustments resulting therefrom.

On or about October 4, 1924, Sussman, through his counsel, was accorded a hearing as to his income-tax returns for the years 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor on or about November 19, 1924, and denied the said appeal or protest of Sussman. By letter dated February 5, 1925, Sussman was notified of the rejection of his claim for abatement of the additional assessment of $169,789.85 for 1917, except as to the amount previously abated. Sussman filed a petition with the Board for redetermination of the deficiency. This proceeding is known as Docket No. 3077.

Were it not for the statute of limitations contained in the Revenue Act of 1921, the Commissioner would have allowed Sussman a credit of $38,370.68 on account of his overpayment to the Government of his 1916 income taxes in that amount.

By letter from the office of the Commissioner of Internal Revenue dated February 5, 1925, Sussman was notified that his tantiemes for the years 1917, 1918, and 1919 constituted income for the years

1918, 1919, and 1920, respectively, and that this resulted in additional taxes for 1918 and 1920, and an overassessment for 1919. By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition to the Board in the proceeding known as Docket No. 3077, Sussman asked a redetermination of such determination.

Within 30 days after February 5, 1925, Sussman filed with the Commissioner a protest against the determination evidenced by such letter. On September 23, 1925, the Commissioner mailed to Sussman a letter denying said protest and determining deficiencies of $129,612.01 for 1918 and of $62,067.79 for 1920, and an overassessment of $59,075.27 for 1919. Sussman filed his petition with the Board for a redetermination of these deficiencies. This proceeding is known as Docket No. 9190.

Said shifts of his said tantiemes by the Commissioner resulted in the determination of tax deficiencies for Sussman as follows: For the year 1918, $129,612.01 and for the year 1920, $62,067.79, and an unpaid assessment for the year 1917 of $51,683.60. Such action by the Commissioner resulted in an overassessment to Sussman for 1919 of $59,075.27.

### Separate findings as to Siegmund Adler.

The taxpayer, Siegmund Adler, is a citizen of the State of New York, and resides at No. 378 West End Avenue, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Adler from the Metal Company for services rendered during that period was $106,585.23, and for the calendar year 1917 the tantieme earned by him from the Metal Company was $71,865.35.

On or about April 12, 1917, Adler duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 and upon said tantieme Adler paid to the Government a tax, at the rates prescribed for 1916, of $10,325.60.

Thereafter, in March, 1918, Adler filed his income-tax return for 1917 wherein he included his tantieme from the Metal Company for that year of $71,865.35, and paid to the Government the tax thereon provided by law.

For the calendar year 1918 Adler's tantieme earned by him from the Metal Company was $9,511.33, and for the calendar year 1919 his tantieme earned by him from the Metal Company was $41,731.36.

Thereafter, in March, 1919, Adler filed his income-tax return for the year 1918 wherein he included his tantieme from the Metal Company for that year of $9,511.33 as income to him for the year 1918,

and in 1920, within the time provided by law, Adler filed his income-tax return for the year 1919 wherein he included as income to him for that year his tantieme from the Metal Company for the year 1919 of $41,731.36, on which amount Adler paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

Thereafter, by letter dated March 16, 1923, and signed by E. W. Chatterton, Deputy Commissioner, Adler was advised that, as the result of an audit of his books of account and records, the said tantieme for the last six months of 1916 was considered to represent income to Adler for the year 1917 and stating that, since it was impractical to give Adler the usual 30 days' notice provided by section 250(d) of the Revenue Act of 1921, the assessment would be made immediately and such assessment was accordingly made. Thereupon, agreeably to said letter and pursuant to law, Adler duly filed a claim for the abatement of a part of said additional tax for 1917, which was fixed by the Commissioner at $40,837.66, to wit, for $40,807.81.

The time within which Adler could have filed any claim for credit or refund pursuant to law on account of his having paid income taxes in the year 1917 on his tantieme for the last six months of 1916, expired on or before March 1, 1922.

The Commissioner refused to credit or refund Adler with the sum of $10,325.60, or any part thereof, representing the income tax paid by Adler in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Adler any credit or refund therefor although requested so to do.

Thereafter and early in November, 1923, and, as the result of a reaudit made of Adler's income-tax return for the year 1917, Adler was advised by certificate of overassessment No. 517,185, signed by J. G. Bright, Deputy Commissioner, that his tantieme of $71,865.35, reported in his 1917 income-tax return as received by him from the Metal Company as income for the year 1917, was considered by the Commissioner's office to be income to him for the year 1918, and not for 1917, and that $30,871.20 of the additional assessment for 1917 had been abated. Notice and demand for payment of the unpaid assessment of $9,936.61 for 1917 were issued by the collector of internal revenue on November 14, 1923.

Adler never consented to or acquiesced in the shifts of his tantiemes for the last six months of 1916 and for the year 1917, and the readjustment of his income taxes resulting therefrom, but on the contrary by appeal or protest dated on or about November 28, 1923, appealed from and protested such shifts by the Commissioner of his tantiemes and the adjustments resulting therefrom.

On or about October 4, 1924, Adler, through his counsel, was accorded a hearing for the years 1916 to 1922, inclusive, by the repre-

sentatives of the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the said appeal or protest of Adler.

By letter dated February 5, 1925, Adler was notified of the rejection of his claim for abatement of the additional assessment for $40,807.81 for 1917, except as to the amount previously abated. Adler filed a petition with the Board for a redetermination of the deficiency.   This proceeding is known as Docket No. 3078.

By letter from the office of the Commissioner of Internal Revenue dated February 5, 1925, Adler was notified that his tantiemes for the years 1917, 1918, and 1919, constituted income for the years 1918, 1919, and 1920, respectively, and that this resulted in additional taxes for 1918 and 1920, and an overassessment for 1919.   By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing.   In the petition to the Board in the proceeding known as Docket No. 3078, Adler asked a redetermination of such determination.

Within 30 days after February 5, 1925, Adler filed with the Commissioner a protest against the determination evidenced by such letter.   On March 10, 1925, the Commissioner mailed to Adler a letter denying said protest and determining deficiencies of $29,510.63 for 1918 and of $5,579.79 for 1920, and an overassessment of $12,789.98 for 1919.   Adler filed his petition with the Board for a redetermination of these deficiencies.   This proceeding is known as Docket No. 4059.   Adler never consented to or acquiesced in the shifting of his tantiemes for 1917, 1918, or 1919.

Said shifts of his tantiemes by the Commissioner resulted in the determination of tax deficiencies for Adler as follows: For the year 1918, $29,510.63; for the year 1920, $5,579.79; and an unpaid assessment for the year 1917 of $9,936.61.        •

Were it not for the statute of limitations contained in the Revenue Act of 1921, the Commissioner would have allowed Adler a credit of $10,325.60 on account of his overpayment of his 1916 income taxes in that amount.

### Separate findings as to Moritz Roos.

The taxpayer, Moritz Roos, is a citizen of the State of New York and resides at No. 525 West End Avenue, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Roos from the Metal Company for services rendered during that period was $106,585.23, and for the calendar year 1917 his tantieme earned by him from the Metal Company, was the sum of $71,865.35.

On or about April 12, 1917, Roos duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 and upon said tantieme Roos paid to the Government, a tax, at the rates prescribed for 1916, of $10,514.84.

Thereafter, in March, 1918, Roos filed his income-tax return for 1917 wherein he included his tantieme for that year of $71,865.35 and paid to the Government the tax thereon provided by law.

For the calendar year 1918, Roos' tantieme, earned by him from the Metal Company, was $9,511.33, and for the calendar year 1919 his tantieme earned by him from the Metal Company was $41,731.36.

Thereafter, in March, 1919, Roos filed his income-tax return for the year 1918, wherein he included his tantieme for that year of $9,511.33 as income for 1918, and in 1920, within the time provided by law, Roos filed his income-tax return for the year 1919 wherein he included as income to him for that year his tantieme for 1919 of $41,731.36, on which sums Roos paid income taxes for 1918 and 1919, respectively, at the rates prescribed by law. On or about April 27, 1922, a field agent examined the 1917 and 1918 income-tax returns of Roos. No reference was made to shifting tantiemes and no objection raised to the manner in which such tantiemes had been reported.

Thereafter, by letter dated March 16, 1923, signed by E. W. Chatterton, Deputy Commissioner, Roos was advised that, as the result of an audit of his books of account and records, the said tantieme for the last six months of 1916 was considered by the Commissioner's office to represent income to Roos for the year 1917, and stating that, since it was impractical to give Roos the usual 30 days' notice provided by section 250(d) of the Revenue Act of 1921, an assessment would be made immediately and such assessment was accordingly made. Thereupon, agreeably to said letter and pursuant to law, Roos duly filed a claim for the abatement of said additional tax for 1917 which was fixed by the Commissioner at $40,734.01.

The time within which Roos could have filed any claim for credit or refund pursuant to law on account of his having paid income taxes in the year 1917 on his tantieme for the last six months of 1916 expired on or before March 1, 1922.

The Commissioner refused to credit or refund Roos with the sum of $10,514.84, or any part thereof, representing the income tax paid by Roos in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Roos any credit or refund on account thereof, although requested so to do.

Thereafter and on or about November 15, 1923, and as the result of a reaudit made of Roos' income-tax return for the year 1917, Roos was advised by certificate of overassessment No. 513,701, signed by J. G. Bright, Deputy Commissioner, that the tantieme and salary,

aggregating $79,065.35, reported by him in his 1917 income-tax return as income received by him from the Metal Company for the year 1917 were considered by the Commissioner to be income for the year 1918 and not for 1917 and that $30,720.90 of the additional assessment for 1917 had been abated. Notice and demand for payment of the unpaid assessment for 1917 were issued by the collector of internal revenue on November 28, 1923.

Roos never consented to or acquiesced in the shifts of his tantiemes for the last six months of 1916 and for the year 1917, and salary for 1917 and the readjustment of his income taxes resulting therefrom, but on the contrary by appeal or protest dated on or about December 5, 1923, appealed from and protested such shifts of his said tantiemes and said salary and the adjustments resulting therefrom.

On or about October 4, 1924, Roos, through his counsel, was accorded a hearing for the years 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied said appeal or protest of Roos.

By letter dated February 5, 1925, Roos was notified of the rejection of his claim for abatement of the additional assessment of $40,734.01 for 1917 except as to the amount previously abated. Roos filed a petition with the Board for a redetermination of the deficiency. This proceeding is known as Docket No. 3079.

By letter from the office of the Commissioner of Internal Revenue, dated February 5, 1925, Roos was notified that his tantiemes for the years 1917, 1918, and 1919 constituted income for the years 1918, 1919, and 1920, respectively, and that this resulted in additional tax for 1918 and 1920 and an overassessment for 1919. By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition to the Board in the proceeding known as Docket No. 3079, Roos asked a redetermination of such determination.

Within 30 days after February 5, 1925, Roos filed with the Commissioner a protest against the determination evidenced by such letter. On March 12, 1925, the Commissioner mailed to Roos a letter denying said protest and determining deficiencies of $30,445.10 for 1918 and $8,851.71 for 1920, and an overassessment of $13,048.74 for 1919. Roos filed his petition with the Board for a redetermination of these deficiencies. This proceeding is known as Docket No. 4060. Roos never consented to or acquiesced in the shifting of his tantiemes for 1917, 1918, or 1919.

Said shifts of his tantiemes by the Commissioner resulted in the determination of tax deficiencies for Roos as follows: For the year

1918, $30,445.10; for 1920, $8,851.71; and an unpaid assessment for the year 1917 of $9,813.11. Such action by the Commissioner also resulted in the determination of an overassessment to Roos for the year 1919 of $13,048.74.

Were it not for the statute of limitations contained in the Revenue Act of 1921, the Commissioner would have allowed Roos a credit of $10,514.84 on account of his overpayment of his 1916 income taxes in that sum.

### Separate findings as to Harold K. Hochschild.

The taxpayer, Harold K. Hochschild, is a citizen of the State of New York and resides at No. 565 West End Avenue, in New York City, N. Y.

For the last six months of 1916 the tantieme earned by Harold K. Hochschild from the Metal Company for services rendered during that period was $35,528.41, and for 1917 his tantieme from the Metal Company, was $47,910.23.

On or about April 12, 1917, Harold K. Hochschild duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 as income to him for 1916, and upon said tantieme Harold K. Hochschild paid to the Government a tax, at the rates prescribed for that year, of $2,731.20.

Thereafter, in March, 1918, Harold K. Hochschild filed his income-tax return for 1917, wherein he included his said tantieme for that year of $47,910.23 and paid to the Government the tax thereon provided by law.

For 1918, Harold K. Hochschild's tantieme earned by him from the Metal Company, was $9,511.33, and for 1919, Harold K. Hochschild's tantieme earned by him from the Metal Company was $62,597.05.

Thereafter, in March, 1919, Harold K. Hochschild filed his income-tax return for 1918 wherein he included as income to him for that year $9,511.33, being his tantieme from the Metal Company for the year 1918, and in 1920, within the time provided by law, said Hochschild filed his income-tax return for the year 1919 wherein he included as income to him for that year his tantieme from the Metal Company for 1919 of $62,597.05, on which sums said Hochschild paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

Said Hochschild filed with the Commissioner a waiver for the year 1917 dated February 28, 1923, upon the agreement that if such waiver was filed no jeopardy assessment would be made upon said Hochschild's alleged tax liability for 1917. Said waiver was approved by the Commissioner on March 7, 1923.

Thereafter by letter dated March 16, 1923, addressed to Harold K. Hochschild and signed by E. W. Chatterton, Deputy Commissioner, said Hochschild was advised that an assessment against him for the year 1917 had been inadvertently listed, although a waiver on his behalf for that year had been theretofore received. The assessment referred to arose from the treatment by the Income Tax Unit of the tantiemes from the Metal Company for the last six months of 1916 as income for 1917 and said letter advised said Hochschild that he could stay collection of the tax by filing a claim for abatement. Thereupon, agreeably to said letter and pursuant to law, said Hochschild duly filed a claim for abatement of a part of said additional tax for 1917, which was fixed by the Commissioner at $15,096.96, to wit, for $12,272.63.

The Commissioner refused to credit or refund to Harold K. Hochschild $2,731.20, or any part thereof, representing the income tax paid by said Hochschild in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give said Hochschild any credit or refund therefor although requested so to do.

On or about October 4, 1924, Harold K. Hochschild, through his counsel, was accorded a hearing for the years 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Harold K. Hochschild.

Thereafter by letter dated February 5, 1925, signed by J. G. Bright, Deputy Commissioner, Harold K. Hochschild was advised that it was held that the tantiemes for the last six months of 1916 constituted income for 1917, that the tantiemes for 1917 constituted income for 1918, and that by reason of such adjustments in the income reported, there was an overassessment of tax for 1917 of $16,261.76, which overassessment was allowed to the extent of $15,096.96, the amount of the additional assessment and denied as to $1,164.80, on the ground that the statute of limitations had run on refund or credit.

By another letter from the office of the Commissioner of Internal Revenue dated February 5, 1925, Harold K. Hochschild was notified that his tantiemes for the years 1917, 1918, and 1919 constituted income for the years 1918, 1919, and 1920, respectively, and that this resulted in additional tax for 1918 and 1920 and an overassessment for 1919. By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition to the Board in the proceeding known as Docket No. 3080, said Hochschild asked a redetermination of such determination with respect to the years 1917 to 1920, inclusive.

Within 30 days after February 5, 1925, said Hochschild filed with the Commissioner a protest against the determination evidenced by such letter. On March 10, 1925, the Commissioner mailed to said Hochschild a letter denying said protest and determining deficiencies of $25,769.44 for 1918 and $31,895.39 for 1920, and an overassessment of $33,777.71 for 1919. Harold K. Hochschild filed his petition with the Board for a redetermination of these deficiencies. This proceeding is known as Docket No. 4057.

Said Hochschild never consented to or acquiesced in the shifts of his tantiemes for the last six months of 1916 and for the years 1917, 1918, and 1919 and the adjustments of his income taxes resulting therefrom, but on the contrary by appeal or protest dated on or about February 24, 1925, appealed from and protested such shifts by the Commissioner of his said tantiemes and the adjustments resulting therefrom.

Said shifts of his tantiemes resulted in the determination of tax deficiencies for Harold K. Hochschild as follows: For the year 1918 of $25,769.44, and for the year 1920 of $31,895.39. Such action by the Commissioner also resulted in an overassessment for the year 1919 of $33,777.71.

Were it not for the statute of limitations contained in the Revenue Act of 1921, the Commissioner would have allowed Harold K. Hochschild a credit of $2,731.20 on account of his overpayment of 1916 income taxes in that sum.

*Separate findings as to Berthold Hochschild*

The taxpayer, Berthold Hochschild, is a citizen of the State of New York and resides at No. 565 West End Avenue, in New York City, N. Y.

For the last six months of 1916 the tantieme earned by Berthold Hochschild from the Metal Company for services rendered during that period was $319,755.69; for the calendar year 1917 his tantieme earned by him from the Metal Company was $179,663.36, and for the calendar year 1918 the tantieme earned by him from the Metal Company was $19,022.66. Said Berthold Hochschild ceased to earn any tantiemes from the Metal Company after December 31, 1918.

On or about April 12, 1917, Berthold Hochschild duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916 and upon said tantieme Berthold Hochschild paid to the Government a tax, at the rates prescribed for 1916, of $43,304.64.

Thereafter, in March, 1918, Berthold Hochschild filed his income-tax return for 1917 wherein he included his said tantieme for that year of $179,663.36 and paid to the Government the tax thereon provided by law.

Thereafter, in March, 1919, Berthold Hochschild filed his income-tax return for the year 1918 wherein he included as income to him for that year $19,022.66, being his tantieme from the Metal Company for the year 1918, and in 1920, within the time provided by law, Berthold Hochschild filed his income-tax return for the year 1919 but did not include therein any tantieme since he did not receive any tantieme for that year as aforesaid.

In October, 1919, Berthold Hochschild was assessed additional income taxes for 1917 of $262,463.86. Said assessment was made largely upon the contention of the Government that the tantieme earned by Berthold Hochschild during the last six months of 1916 and so reported by him as income to him from the Metal Company for 1916 was income to him for 1917.

In making said additional assessment of $262,463.86 for 1917, the Commissioner did not allow Berthold Hochschild any credit or refund in the sum of $43,197.56 paid by him as income taxes for 1916 on account of his having included his said tantieme for the last six months of 1916 as income to him from the Metal Company for that year.

On or about January 19, 1920, Berthold Hochschild filed a claim for the abatement of the whole of said tax. In said claim, Hochschild protested that no credit or allowance had been given him for an over-payment of 1916 income taxes and alleged other errors. The claim for abatement was allowed in the amount of $14,000, reducing the outstanding additional assessment for 1917 to $248,463.86.

Thereafter, in 1923, Berthold Hochschild, under written protest, paid to the Government as additional taxes for 1917, $182,448.61, plus $5,000 as interest and penalty.

Thereafter, in December, 1923, said claim for abatement was allowed in the additional amount of $123,400.78 of which $65,015.25 was applied as an abatement of the outstanding assessment and $58,385.53, with interest was refunded to Berthold Hochschild. In determining such overassessment tantiemes earned in 1917 were eliminated from 1917 income and shifted to 1916 income and certain adjustments were made in other respects. The sum of the over assessments allowed and of the payments made in 1923 exceeded the amount of the additional assessment of tax for 1917.

On or about October 4, 1924, Berthold Hochschild, through his counsel, was accorded a hearing by representatives of the then solicitor of internal revenue on his income-tax returns for 1916 to 1922, inclusive, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Berthold Hochschild.

On February 5, 1925, three letters were mailed to Berthold Hochschild from the office of the Commissioner of Internal Revenue. In

one of said letters the protest made by said Hochschild with respect to the determination of 1917 tax, and the refusal of the Commissioner to allow a greater overassessment was denied. In another of said letters Berthold Hochschild was advised that an examination of his books and records indicated a deficiency in tax for 1918 and that 30 days would be allowed in which to protest the determination of such a deficiency. In the third letter the Commissioner notified Berthold Hochschild of the determination of a deficiency of $10,227.15 for 1919. Berthold Hochschild filed a petition with the Board for the redetermination of such determination with respect to 1917, 1918, and 1919. Such proceeding is known as Docket No. 3081.

Within 30 days after February 5, 1925, Berthold Hochschild filed with the Commissioner a protest against the determination of a deficiency for 1918 evidenced by the letter of February 5, 1925. On March 10, 1925, the Commissioner mailed to Berthold Hochschild a letter denying said protest and determining a deficiency of $103,-068.97 for 1918. Berthold Hochschild filed his petition with the Board for the redetermination of such deficiency. This proceeding is known as Docket No. 4058. Berthold Hochschild never consented to or acquiesced in the shifting of his tantiemes for 1917, 1918, or 1919.

Said shifts of Berthold Hochschild's tantiemes by the Commissioner resulted in the determination of tax deficiencies for Berthold Hochschild as follows: For the year 1918, $103,068.97 and for the year 1919, $10,227.15.

*Separate findings as to Carl M. Loeb.*

The taxpayer, Carl M. Loeb, is a citizen of the State of New York and resides at No. 77 Park Avenue, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Carl M. Loeb from the Metal Company for services rendered during that period was $532,926.15; for the calendar year 1917 his tantieme earned by him from the Metal Company was $359,326.73; for the calendar year 1918 his tantieme earned by him from the Metal Company was $47,556.67 and for the calendar year 1919 his tantieme earned by him from the Metal Company was $208,656.82.

On or about April 12, 1917, Carl M. Loeb duly filed an amended return for the calendar year 1916 wherein he included his said tantieme for the last six months of 1916.

Thereafter, in March, 1918, Carl M. Loeb filed his income-tax return for 1917 wherein he included his tantieme for that year of $359,326.73 and paid to the Government the tax thereon provided by law.

Thereafter and in March, 1919, Carl M. Loeb filed his income-tax return for the year 1918 wherein he included as income to him for that year his tantieme for 1918 of $47,556.67, and in 1920, within the time provided by law, Carl M. Loeb filed his income-tax return for 1919 wherein he included as income to him for that year his tantieme for 1919 of $208,656.82, on which sums Carl M. Loeb paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

Thereafter, by letter dated October 8, 1921, and signed by the then Deputy Commissioner, Carl M. Loeb was advised of an additional tax liability for 1917 of $308,756.48, and an overpayment for 1916 of $63,239, making a net additional tax liability of $245,517.48.

By letter dated October 27, 1921, Carl M. Loeb protested such additional tax to the Commissioner. On October 28, 1921, a conference was held in the Income Tax Unit in the tantieme cases of Julius Loeb, Hans Bernstorff, and Carl M. Loeb. Further conferences as to said three taxpayers were held on December 29, 1921, and on January 12, 1922. As a test case involving the additional 1917 income tax resulting from the shift of said 1916 tantieme to 1917 income, the taxpayer, Julius Loeb, appealed to the Commissioner from the decision of the Income Tax Unit by appeal dated February 17, 1922, and said case of Julius Loeb was certified to the Committee on Appeals and Review of the Bureau of Internal Revenue by letter of transmittal dated November 2, 1922.

By reason of said shift by the Commissioner of Carl M. Loeb's tantieme for the last six months of 1916 so as to constitute income to him for the year 1917, the collector of internal revenue for the second district of New York sent to Carl M. Loeb on or about January 5, 1922, a bill for $245,517.48, representing 1917 additional taxes in that amount.

On or about January 10, 1922, Carl M. Loeb filed a claim for the abatement of said 1917 additional or deficiency tax. Carl M. Loeb never consented to or acquiesced in the shifting of his said tantieme for the last six months of 1916 so as to constitute income to him for the year 1917.

The said sum of $245,517.48 was paid by Carl M. Loeb under written protest in installments on the dates of July 12, 1923, August 20, 1923, September 21, 1923, and October 24, 1923, and subsequently claim for refund was filed therefor.

On or about October 4, 1924, Carl M. Loeb was accorded a hearing for 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Carl M. Loeb.

Thereafter by two letters bearing date of February 5, 1925, signed by J. G. Bright, Deputy Commissioner, Carl M. Loeb was advised that the tantieme from the Metal Company received by him for 1917 was considered to be income for 1918, the tantieme received by him from the Metal Company for 1918 was considered to be income for 1919 and the tantieme received by him from the Metal Company for 1919 was considered to be income for 1920; that the claim for refund of 1917 tax was allowed as to $213,310.70 and that there were additional taxes due for 1918 and 1920 and an overassessment for 1919.

In the letter referring to the years 1918, 1919, and 1920, he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition to the Board in the proceeding known as Docket No. 3082, Carl M. Loeb asked a redetermination of such determination with respect to taxes for the years 1917 to 1920, inclusive.

Within 30 days after February 5, 1925, Carl M. Loeb filed with the Commissioner a protest against the determinations evidenced by such letters. In March, 1925, an additional tax of $221,018.17 for 1918, was assessed against Carl M. Loeb. On September 23, 1925, the Commissioner mailed to said Loeb a letter denying a claim for the abatement, credit or refund of said additional assessment of $221,018.17. Carl M. Loeb filed a petition with the Board for a redetermination of such determination of the Commissioner. This proceeding is known as Docket No. 9192. On September 23, 1925, the Commissioner also mailed to Carl M. Loeb, a letter denying his protest and determining a deficiency of $119,788.45 for 1920 and an overassessment of $104,187.36 for 1919. Carl M. Loeb duly filed his petition with the Board for a redetermination of such determination by the Commissioner. This proceeding is known as docket No. 9191. Carl M. Loeb never consented to or acquiesced in the shifting of his tantiemes for the last six months of 1916 or for 1917, 1918, and 1919.

The shifting of Carl M. Loeb's said tantiemes and the adjustment of his income for the years in question resulted in the following: A tax deficiency to Carl M. Loeb for the year 1918 of $221,018.17; a tax deficiency to him for the year 1920 of $119,788.45; and an overassessment to him for 1919 of $104,187.36 and a certificate of overassessment to him for 1917 of $213,310.70.

*Separate findings as to Julius Loeb.*

The taxpayer, Julius Loeb, is a citizen of the State of New York and resides at No. 31 East 72nd Street, in New York City, N. Y.

For the last six months of 1916 the tantieme earned by Julius Loeb from the Metal Company was $213,170.46; for 1917 the tantieme earned by him from the Metal Company was $143,730.69; for 1918

the tantieme earned by him from the Metal Company was $19,022.66; and for 1919 the tantieme earned by him from the Metal Company was $83,462.73.

On or about April 12, 1917, Julius Loeb duly filed an amended return for the calendar year 1916 wherein he included his tantieme for the last six months of 1916.

Thereafter and in March, 1918, Julius Loeb filed his income-tax return for 1917, wherein he included his tantieme for that year in the amount of $143,730.69 and paid to the Government the tax thereon provided by law.

Thereafter and in March, 1919, Julius Loeb filed his income-tax return for 1918, wherein he included as income to him for that year $19,022.66, being his tantieme for the year 1918, and in 1920, within the time provided by law, Julius Loeb filed his income-tax return for 1919 wherein he included as income to him for that year his tantieme for 1919 of $83,462.73, on which sums Julius Loeb paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

By letter dated October 8, 1921, signed by the then Deputy Commissioner and addressed to Julius Loeb, he was advised of an additional tax liability for 1917 of $102,392.27 and an overpayment for 1916 of $21,228.39, making a net additional tax liability of $81,163.88.

Julius Loeb, by letter dated October 27, 1921, protested such additional tax. Conferences were held in the Income Tax Unit as to the tantiemes of Julius Loeb, Hans Bernstorff and Carl M. Loeb, on October 28, 1921, December 29, 1921, and January 12, 1922. From the decision of the said Unit, Julius Loeb appealed to the Commissioner by appeal dated February 17, 1922, and said appeal was certified to the Committee on Appeals and Review of the Commissioner's office by letter dated November 2, 1922. One of the questions raised in said appeal was whether 1917 tantiemes were taxable income in 1917 or 1918.

The said Committee on Appeals and Review, by letter dated January 11, 1923, and approved by the Commissioner, held that Julius Loeb's said tantieme for the last six months of 1916 was income to him for 1917. Said letter also denied the claim of Julius Loeb that if 1916 tantiemes were shifted to 1917, then 1917 tantiemes should be shifted to 1918, in the following language:

The above conclusion is based upon the peculiar facts existing at the close of the year 1916 and has no application under the different facts existing at the end of the calendar year 1917 and subsequent years.

Accordingly the Committee recommends that the action of the Income Tax Unit be sustained.

Julius Loeb never consented to or acquiesced in the said decision of the Commissioner as evidenced by said letter from the Committee on Appeals and Review.

11340°—28——54

Thereafter and prior to April 24, 1924, the Commissioner held that the tantieme of Julius Loeb of $143,730.69, received by him from the Metal Company for the year 1917, was income to Julius Loeb for the year 1918.

On or about October 4, 1924, Julius Loeb, through his counsel, was accorded a hearing on his income-tax returns for the years 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Julius Loeb.

By letter dated February 5, 1925, signed by J. G. Bright, Deputy Commissioner, Julius Loeb was advised that his claim for refund of the additional tax of $81,163.88 was denied. By another letter dated February 5, 1925, signed by J. G. Bright, Deputy Commissioner, Julius Loeb was advised that his said tantiemes for 1918 and 1919 had been shifted to and were held to be income for 1919 and 1920, respectively, and that this resulted in additional taxes for 1918 and 1920, and an overassessment for 1919. By such letter he was granted 30 days from the date thereof within which to file a protest with the Commissioner and was notified that if such protest was filed he would be granted a hearing. In the petition in the proceeding known as Docket No. 3083, Julius Loeb asked a redetermination of such determination with respect to the years 1917 to 1920, inclusive.

Within 30 days after such letter of February 5, 1925, Julius Loeb filed with the Commissioner a protest against the determination evidenced by such letter. On March 10, 1925, the Commissioner mailed to Julius Loeb a letter denying said protest and determining deficiencies of $67,398.95 for 1918 and $27,170.69 for 1920, and an overassessment of $29,467.71 for 1919. Julius Loeb filed his petition with the Board for a redetermination of this determination. This proceeding is known as Docket No. 4061. Julius Loeb never consented to or acquiesced in the shifting of his tantiemes for the last six months of 1916 or for 1917, 1918, or 1919.

Said shifts of said tantiemes by the Commissioner have resulted in tax deficiencies for Julius Loeb as follows: for the year 1918, $67,398.95, and for the year 1920, $27,170.69. Said shifts also resulted in an overpayment for the year 1919 of $29,467.71.

*Separate findings as to Henry V. Putzel.*

The taxpayer, Henry V. Putzel, is now a citizen of the State of Missouri and resides at No. 5894 Clemens Avenue, St. Louis, Mo., but during the years in question was a citizen of the State of New York and resided in said State.

For the last six months of 1916 the tantieme earned by Putzel from the Metal Company for services rendered during that period was $35,528.41; for the calendar year 1917 Putzel's tantieme earned by him from the Metal Company, was $47,910.23; for 1918 his tantieme, earned by him from the Metal Company, was $9,511.33; for 1919 his tantieme, earned by him from the Metal Company, was $41,731.36.

On or about April 12, 1917, Putzel duly filed an amended return for the calendar year 1916 wherein he included his tantieme for the last six months of 1916. Upon said tantieme Putzel paid a tax, at the rates prescribed for that year, of $2,159.49.

By letter dated May 1, 1918, signed by L. F. Speer, Deputy Commissoner of Internal Revenue, Putzel was advised of an audit having been made of his income-tax returns for the years 1915 and 1916, and further advised that he had underpaid his income tax for the year 1916 in the amount of $36.66 and had overpaid his 1915 tax in the amount of $1.57.

Thereafter, Putzel duly paid to the Government said additional tax of $36.66 requested in said letter of May 1, 1918.

In March, 1918, Putzel filed his income-tax return for the year 1917 wherein he included his said tantieme for that year of $47,910.23, and paid tax thereon at the rates prescribed by law.

Thereafter, in March, 1919, Putzel filed his income-tax return for 1918 wherein he included as income to him for that year his said tantieme for 1918 of $9,511.33, and in 1920, within the time provided by law, Putzel filed his income-tax return for 1919 wherein he included as income to him for that year his tantieme for 1919 of $41,-731.35, on which sums Putzel paid income taxes for 1918 and 1919, respectively, at the rates then prescribed by law.

Thereafter, by letter dated January 31, 1923, signed by E. W. Chatterton, Deputy Commissioner of Internal Revenue, Putzel was advised that, as the result of an audit of his books of account and records, there was an additional tax liability for 1917 income of $10,782.66, and that, since it was impractical to give Putzel the usual 30 days' notice provided by section 250(d) of the Revenue Act of 1921, the assessment would be made immediately and such assessment was accordingly made.

Thereupon, and on April 13, 1923, Putzel duly filed a claim for the abatement of said additional 1917 tax, which was fixed by the Commissioner at $10,782.66.

The time within which Putzel could have filed any claim for credit or refund, pursuant to law, on account of his having paid income taxes in the year 1917 on his tantieme for the last six months of 1916 expired on or about March 1, 1922.

The Commissioner refused to credit or refund Putzel with $2,159.49 or any part thereof, representing the income tax paid by Putzel in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Putzel any credit or refund therefor although requested so to do.

On or about October 4, 1924, Putzel, through his counsel, was accorded a hearing on his income-tax returns for the years 1916 to 1922, inclusive, by the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Putzel.

By two letters dated February 5, 1925, signed by J. G. Bright, Deputy Commissioner of Internal Revenue, Putzel was advised that his said tantiemes from the Metal Company had been shifted as income from 1917 to 1918, from 1918 to 1919, and from 1919 to 1920, respectively.

In April, 1925, by certificate of overassessment No. 524,046, Putzel was advised that his 1917 tantieme was construed to be income to him for 1918, and that his overassessment for 1917 taxes amounted to $13,334.50 as shown by such certificate, but that refund or credit of $2,551.84 of that amount was barred by the statute of limitations.

On March 10, 1925, the Commissioner notified Putzel of the determination of a deficiency of $15,291.25 for 1918 and an overassessment of $11,326.75 for 1919. Putzel duly appealed to the Board for a redetermination of such determinations.

Said shifts of his tantiemes by the Commissioner resulted in the following tax deficiency and overassessment to Putzel, to wit:

For the year 1918 a deficiency in the sum of $15,291.25, and for the year 1919 an overassessment in the sum of $11,326.75.

Were it not for the statute of limitations contained in the Revenue Acts of 1921 and of 1924 the Commissioner would have allowed Putzel a credit on his overpayment of 1916 income taxes of $2,159.49, and a further credit on account of his overassessment for 1917 income taxes of $2,551.84.

### Separate Findings as to Hans Bernstorff.

The taxpayer, Hans Bernstorff, is a citizen of the State of New York, and resides at No. 525 West End Avenue, in New York City, N. Y.

For the last six months of 1916 the tantieme earned by Bernstorff from the Metal Company for services rendered during that period was $35,528.41; for 1917 his tantieme earned by him from the Metal Company was $47,910.23; for 1918 his tantieme earned by him from

the Metal Company was $9,511.33; and for 1919 his tantieme earned by him from the Metal Company was $41,731.36.

On or about April 12, 1917, Bernstorff duly filed an amended return for the calendar year 1916, wherein he included as income for 1916 his tantieme for the last six months of 1916, and paid a tax thereon at the rates prescribed for 1916, in the sum of $2,121.93.

Thereafter, and in March, 1918, Bernstorff filed his income-tax return for 1917, wherein he included his tantieme for that year of $47,910.23 and paid the tax thereon provided by law.

Thereafter, in March, 1919, Bernstorff filed his income-tax return for 1918 wherein he included as income to him for 1918 his tantieme for that year of $9,511.33, and in 1920, within the time provided by law, Bernstorff filed his income-tax return for 1919, wherein he included as income to him for that year his tantieme for 1919 of $41,731.36, on which sums Bernstorff paid income taxes for 1918 and 1919, respectively, at the rates prescribed by law.

By letter dated October 10, 1921, signed by E. H. Batson, Deputy Commissioner of Internal Revenue, Bernstorff was advised that the report of the supervising revenue agent at New York, dated April 23, 1919, disclosed an additional tax liability against said Bernstorff for 1917 of $10,294.68, resulting from the shifting of his said tantieme for the last six months of 1916 to 1917 income. Bernstorff protested and requested that his tax liability be considered in connection with that of Julius Loeb. Conferences were held in the Income Tax Unit on October 28, 1921, December 29, 1921, and January 12, 1922. Said additional tax for 1917 was assessed in January, 1922, and thereupon, on February 23, 1922, Bernstorff duly filed a claim for the abatement of said additional 1917 tax.

The time within which Bernstorff could have filed any claim for credit or refund pursuant to law on account of his having paid income taxes in the year 1917 on his tantieme from the Metal Company for the last six months of 1916, expired on or about March 1, 1922.

The Commissioner refused to credit or refund Bernstorff with $2,121.93, or any part thereof, representing the income tax paid by Bernstorff in 1917 on his tantieme for the last six months of 1916, and the Commissioner has ever since refused to give Bernstorff any credit or refund thereon although requested so to do.

On or about September 8, 1923, Bernstorff was advised by the office of the Commissioner that a reaudit of his books of account and records disclosed an overassessment for 1917 of $14,153.93, but that $2,775.22 thereof was barred by the provisions of section 252 of the Revenue Act of 1921. In and by said letter, Bernstorff was advised that he should file immediately a claim for abatement for

$11,378.71, and that, upon receipt of such claim properly executed, ·a certificate of overassessment in said sum of $11,378.71 would be issued to Bernstorff.

Thereafter, and on or about September 24, 1923, Bernstorff filed with the collection a claim for abatement of $10,295.68, pursuant to the said letter of September 8, 1923.

On or about October 4, 1924, Bernstorff, through his counsel, was accorded a hearing for the years 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied the appeal or protest of Bernstorff.

By two letters dated February 5, 1925, Bernstorff was advised that the Commissioner had corrected the adjustment resulting from the shifting of Bernstorff's 1917 tantieme to 1918 income as set out in said letter of September 8, 1923, and that the overassessment for 1917 was $13,131.53, of which $1,752.82 could not be allowed. He was also advised that his tantieme had been shifted from 1918 to 1919, and from 1919 to 1920, resulting in a deficiency in tax for 1918, an overassessment in tax for 1919, and a deficiency in tax for 1920.

By reason of the shifts of Bernstorff's tantieme from 1917 to 1918 income a credit or refund in the sum of $13,131.53 in 1917 tax accrued to Bernstorff, but of said sum the Commissioner refused to credit or refund Bernstorff with $1,752.82 thereof on the ground that the statute of limitations barred the refund or credit of that amount.

The time within which Bernstorff could have filed a claim for credit or refund on account of the overpayment of his income tax for the year 1917 expired on or about March 1, 1923.

On March 10, 1925, the Commissioner mailed to Bernstorff notice of the determination of deficiencies of $13,479.52 for 1918 and $3,140.84 for 1920 and of an overassessment of $12,117.97 for 1919. From such determinations Bernstorff appealed to the Board.

Said shifts of his tantiemes by the Commission resulted in determinations of tax deficiencies for Bernstorff as follows: For the year 1918, $13,479.52, and for the year 1920, $3,140.84. Such action by the Commissioner also resulted in an overassessment to Bernstorff for the year 1919 in the sum of $12,117.97.

Were it not for the statute of limitations contained in the Revenue Acts of 1921 and 1924, the Commissioner would have allowed Bernstorff credits on account of his overpayments of 1916 and 1917 income taxes in the amounts of $2,121.93 and $1,752.82, respectively.

*Separate findings as to Henry Bruere.*

The taxpayer, Henry Bruere, is a citizen of the State of New York and resides at No. 216 East 18th Street, in New York City, N. Y.

For the last six months of 1916, the tantieme earned by Bruere from the Metal Company for services rendered during that period was $35,528.41; for 1917 the tantieme earned by him from the Metal Company was $47,910.23; for 1918 the tantieme earned by him from the Metal Company was $9,511.33; and for 1919 the tantieme earned by him from the Metal Company was $41,731.36.

In March, 1918, Bruere duly reported his said tantieme for 1917 of $47,910.23 in his income-tax return for 1917 wherein he also included his other income for 1917.

He also included in his 1917 income return his said tantieme of $35,528.41 for the last six months of 1916, also a bonus to him for 1917 from the Metal Company of $25,000 and his salary of $9,900 for the year 1917. Upon said tantieme for the last six months of 1916 and for the year 1917, and upon said bonus and his said salary for 1917, he paid to the Government an income tax of $29,799.47 at the rates then prescribed by law.

Owing to Bruere's absence in Mexico he did not file in April, 1917, an amended income-tax return for the year 1916 and, instead of so doing he included in his return for 1917 income, filed in 1918, his said tantieme for the last six months of 1916.

In March, 1919, Bruere filed his income-tax return for the year 1919, wherein he included as income to him for that year $9,511.33, being his tantieme for the year 1918, and in March, 1920, Bruere filed his income-tax return for the year 1919, wherein he included as income to him for 1919 his tantieme for 1919 of $41,741.36, on which sums Bruere paid income taxes for the years 1918 and 1919, respectively, at the rates then prescribed by law.

By letter dated March 16, 1923, signed by E. W. Chatterton, Deputy Commissioner, Bruere was advised (in the erroneous belief on the part of the Bureau that Bruere had filed an amended return for 1916 and had included therein his said tantieme from the Metal Company for the last six months of 1916) that an additional assessment of $12,925.15 had been made against Bruere for the year 1917 by shifting said tantieme to 1917 income.

Thereupon, and on or about the 26th day of March, 1923, Bruere duly filed a claim for abatement of said additional tax of $12,975.15, and thereby fully advised the Commissioner of his mistake as to said tantieme.

Thereafter, and in the month of November, 1923, and as the result of a reaudit of Bruere's income-tax return for the year 1917, by certificate of overassessment No. 508,918, Bruere was advised that

the error with respect to the tantieme for the last six months of 1916 was corrected but that the tantieme reported by him in his 1917 income-tax return as received by him for the year 1917 was considered to be income of Bruere for the year 1918.

In and by said certificate of overassessment No. 508,918, Bruere was advised that by reason of such correction and said shifting of his tantieme from 1917 to 1918 income as aforesaid, Bruere was entitled to an overassessment or credit of $36,854.08, of which amount, however, credit was refused to Bruere for the reason, as assigned by said certificate of overassessment, that such credit for such overpayment was barred by section 250 (d) of the Revenue Act of 1921 because no claim therefor had been filed by the taxpayer within the statutory period provided by section 250 (d).

The time within which Bruere could, pursuant to law, have applied for credit or refund on account of overpayment of his 1917 income tax, as determined by the Commissioner, expired on or about March 1, 1923.

Bruere never consented to or acquiesced in said shift of his tantieme from the year 1917 to 1918 and the adjustment of his income taxes resulting therefrom, but on the contrary by appeal or protest, dated January 19, 1924, objected to, appealed from and protested such shifts of his said tantieme and the adjustment resulting therefrom.

On or about October 4, 1924, Bruere, through his counsel, was accorded a hearing as to his income-tax returns for 1916 to 1922, inclusive, by representatives of the then solicitor of internal revenue, and thereafter the Commissioner approved the opinion of said solicitor, dated on or about November 19, 1924, and denied said appeal or protest of said Bruere.

By letter of J. G. Bright, Deputy Commissioner, dated February 5, 1925, Bruere was advised that, as the result of the reaudit of his income-tax returns for the years 1918 and 1919 his tantiemes for such years had been shifted so as to constitute income to him for the years 1919 and 1920, respectively.

On March 10, 1925, the Commissioner mailed to Bruere notice of his determination of deficiencies of $18,784.84 for 1918 and $9,873.58 for 1920 and of an overassessment of $7,525.69 for 1919. From such determination Bruere duly filed his petition with the Board.

Bruere never consented to or acquiesced in the shifts of his tantiemes for the years 1918 and 1919, but on the contrary by appeal or protest dated on or about March 2, 1925, appealed from and protested said shifts of his said tantiemes and the adjustments resulting therefrom.

Said shifts of Bruere's tantiemes by the Commissioner resulted in tax deficiencies for Bruere as follows: for 1918, $18,784.84, and for

1920, $9,873.58. Such shifts also resulted in a credit to Bruere for the year 1919 of $7,525.69.

OPINION.

PHILLIPS: These proceedings raise several questions with respect to the jurisdiction of the Board. In some instances the petition filed with the Board was based upon a letter from the Bureau of Internal Revenue which was not a final determination by the Commissioner. In such cases further petitions were later duly filed based upon the notice of final determination. In other instances the petitioners seek to have the Board consider the action of the Commissioner for a year for which he has made no determination of a deficiency. In such cases the Board has no jurisdiction. *Appeal of R. P. Hazzard Co.*, 4 B. T. A. 150; *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255. In others which the petitioners seek to have us consider, the Commissioner denied claims for refund or credit or allowed claims for abatement in excess of the amount of the additional assessment. In neither of such cases has the Board any jurisdiction under the provisions of the Revenue Act of 1926. That the respondent did not raise the jurisdictional question in some instances is unimportant, the Board being a body of limited jurisdiction and without power, even by consent of the parties, to accept jurisdiction not conferred on it by the law.

In the proceeding instituted by Theodore Stanfield, known as Docket No. 3076, the Board has jurisdiction as to the year 1917 but not of the year 1918, the proceeding as to that year being based upon a notice which was not a final determination. That proceeding, so far as it relates to 1918, will be dismissed for want of jurisdiction. That year is properly before the Board in the proceeding known as Docket No. 4056.

In the proceeding instituted by Otto Sussman, known as Docket No. 3077, the Board has jurisdiction as to the year 1917 but not of the years 1918, 1919, and 1920. That proceeding, so far as it relates to the years 1918, 1919, and 1920, will be dismissed for want of jurisdiction. In the proceeding instituted by Otto Sussman, known as Docket No. 9190, the years 1918 and 1920 are properly before the Board. For the year 1919 the Commissioner determined no deficiency and denied no claim for the abatement of any additional assessment of tax. Under the Revenue Act of 1926, the Board had no jurisdiction as to that year, as was pointed out in the cases cited above.

The jurisdictional questions presented in the proceeding instituted by Siegmund Adler are the same as those presented in the petitions filed by Otto Sussman. The proceeding known as Docket No. 3078

will be dismissed, so far as it relates to the years 1918, 1919, and 1920, for want of jurisdiction to consider those years and the proceeding known as Docket No. 4059 will be dismissed as to the year 1919 for the same reason.

The proceeding filed by Moritz Roos known as Docket No. 3079, will be dismissed, so far as it relates to the years 1918, 1919, and 1920, for want of jurisdiction in the Board to consider those years, and the proceeding known as Docket No. 4060 will be dismissed as to the year 1919 for the same reason.

In the proceeding instituted by Harold K. Hochschild known as Docket No. 3080, it appears that for the year 1917 the Commissioner has allowed an abatement of tax to the extent of the assessment previously made by him, resulting in the determination of no deficiency. In such circumstances the Board has no jurisdiction as to that year. Nor has the Board jurisdiction in that proceeding of the years 1918, 1919, and 1920, the proceeding not being based upon notice of a final determination. The proceeding known by such docket number will, therefore, be dismissed for want of jurisdiction. In the proceeding instituted by Harold K. Hochschild, known as Docket No. 4057, the Board has jurisdiction as to the years 1918 and 1920, but none as to the year 1919. That proceeding, so far as it relates to such year, will be dismissed for want of jurisdiction.

In the proceeding filed by Berthold Hochschild and known as Docket No. 3081, said Hochschild petitions the Board for a redetermination of his tax liability for 1917, 1918, and 1919. As to 1917, the petition is based upon a letter from the Commissioner refusing to change his previous decision with reference to the tax liability for that year. There was no denial of a claim for abatement of an unpaid additional assessment or the determination of any deficiency in tax. Such letter was in effect a refusal to grant a credit or refund and the Board is without jurisdiction to consider that year. For the year 1918 the petition is based upon a letter from the office of the Commissioner which was not a final determination. The proceeding bearing Docket No. 3081 will be dismissed as to the years 1917 and 1918 for want of jurisdiction. The year 1919 is properly before us in that proceeding and the year 1918 is properly before us in the proceeding instituted by said Hochschild, known as Docket No. 4058.

In the proceeding instituted by Carl M. Loeb, known as Docket No. 3082, the Board is asked to redetermine the tax liability for the years 1917 to 1920, inclusive. The petition, so far as it relates to 1917 is based upon the denial of a claim of refund and for the years 1918, 1919, and 1920 upon a notice which did not evidence a final determination. The proceeding bearing such docket number will be dismissed for want of jurisdiction. The liability of said Carl

M. Loeb for income tax in the year 1918 is properly before us in the proceeding instituted by him known as Docket No. 9192, arising from the denial of a claim for abatement of an additional assessment of tax for that year. The year 1920 is properly before us in the proceeding known as Docket No. 9191. This latter proceeding, however, must be dismissed as to the year 1919 for want of jurisdiction, no deficiency having been determined.

The situation in the proceeding filed by Julius Loeb, known as Docket No. 3083, is the same as exists in Docket No. 3082 filed by Carl M. Loeb and must be dismissed for want of jurisdiction. The tax liability of this petitioner for the years 1918 and 1920 was properly before us in the proceeding known as Docket No. 4061. This proceeding, however, must be dismissed for want of jurisdiction so far as it relates to the year 1919, no deficiency having been determined.

In the proceeding instituted by Henry V. Putzel, Docket No. 4053, only the year 1918 is properly before us. The proceeding, so far as it purports to relate to other years, must be dismissed.

In the proceedings instituted by Hans Bernstorff, Docket No. 4054, and Henry Bruere, Docket No. 4055, the years 1918 and 1920 are properly before us. So far as the proceedings purport to relate to the year 1919, they must be dismissed for want of jurisdiction.

It is contended in the brief of the petitioners that in several of these proceedings assessment or collection of the deficiencies involved are barred by the period of limitation provided by law. While it appears that this may be so if there are no circumstances which extend the period of limitations or remove these deficiencies from its operations, the question of such limitation was not raised by the pleadings. It does appear that in some cases consents to a later determination, assessment and collection were filed. In other cases there is no proof whether such consents were filed. This question not being before us, we make no determination with respect to it.

The question before us involves a determination of the proper method of reporting so-called "tantiemes," a term used in the pleadings, stipulations, and testimony to describe the share of the profits which was payable annually to certain officers and employees of the American Metal Co. as additional compensation for services rendered by them. The greater portion of the facts were stipulated and, so far as they appear to be at all material to a decision of these proceedings upon any theory, they have been incorporated in our findings, although they raise several questions which become immaterial in the view we take of these cases.

The principal question is whether such tantiemes were properly reported as income for the year in which they were earned or should have been reported for the succeeding year. For many years it had

been the custom of the American Metal Co. to permit its principal employees, including the tantieme recipients, to make use of its accounting staff. For these employees the company attended to the details of the investment of their funds and the sale of such investments, to the collection of the income therefrom, to the payment of their bills, and to the recording of all these transactions. In addition, it acted as banker for them, allowing interest on daily balances. The purpose was to conserve the time of these officers and employees. There are in evidence transcripts of the accounts which were kept for such employees, which show that these facilities were used extensively by the petitioners. Not only were business transactions handled and recorded for them by the company, but bills for personal and household expenses were regularly paid by check of the company and charged to the accounts. That these persons might have a record of their income and expenses, their investments and sales, a separate ledger was set up in which a detailed record was kept for each. The testimony discloses that such details were not necessary for the records of the company, all that it needed being a record of the amount of any credit or debit and a reference to the voucher or check number. Through these accounts passed all the business and nearly, if not all, of the personal transactions of these petitioners. Additional clerical labor was employed at the direction of the officers of the company, that it should be possible to perform these services and keep these accounts for the officers and employees.

These accounts were always available to the person for whom they were kept and at regular stated intervals, monthly, quarterly or semiannually, as the individuals might choose, copies were made and delivered to them. None of the petitioners kept any other accounts and all of them relied upon the accounts kept for them by the Metal Company for information in preparing their tax returns and in other matters.

The petitioners were under no compulsion to avail themselves of the facilities offered by the company and the company was likewise under no compulsion to act as banker and accountant for its officers and employees. The plan, however, was one which proved mutually satisfactory, the company receiving the benefit of the time saved and the petitioners having available complete records of their financial transactions, kept for their benefit under the supervision of accountants.

With minor exceptions all items which would affect net taxable income were regularly kept upon an accrual basis. Income-tax returns were prepared from these accounts in accordance with the basis on which such books were kept. Petitioners had no other record from which to prepare their returns and with the many pur-

chases and sales made, dividends and interest received or accrued, and deductible items paid out, it appears that it would have been impossible accurately to prepare the returns without some such record.

Since 1916 each of the revenue acts has contained the provision that returns are to be made in accordance with the method of accounting regularly employed in keeping the accounts of the taxpayer unless such method does not clearly reflect income. This the petitioners did, unless it is to be said that the accounts kept for them by the accountants of the company are not to be considered as their accounts. We see no distinction in principle between accounts kept by an accountant who might be paid by the taxpayer and accounts kept for a taxpayer by accountants furnished by an employer, over which accounts the taxpayer has control. If such accounts are the only accounts kept by or for the taxpayer and if they correctly reflect all his income, we are of the opinion that returns are properly made in accordance with the method employed in keeping such accounts.

It can scarcely be contended that the tantiemes did not accrue to the petitioners in the years in which the services, for which they were payment, were rendered. While the exact amount was not known at the close of each year, all facts necessary to a computation were ascertainable at that time. That the computation and entry are subsequently made is immaterial. See *United States* v. *Anderson*, 269 U. S. 422; *Appeal of Max Schott*, 5 B. T. A. 79.

The last six months of 1916 stand on no different basis than subsequent years, for while the formal resolution changing the accounting period from a fiscal to a calendar year was not passed by the directors until 1917, it is stipulated that it was agreed in 1916 between those who controlled the company (and these included the directors and the tantieme recipients) that such change should be made, effective July 1, 1916, and instructions were issued accordingly. The subsequent formal resolution of the directors confirmed the action already taken in 1916.

Where as here the accounts are regularly kept on an accrual basis, the returns are to be made on that basis even though some items are recorded upon a different basis. In such cases, net income will be adjusted to correctly reflect it upon the accrual basis. *Appeals of Bartles-Scott Oil Co.*, 2 B. T. A. 16; *John F. Cook*, 4 B. T. A. 916; *Max Schott*, 5 B. T. A. 79. Consideration of the record leads us to the conclusion that only a very small portion of the total income and deductions were recorded on other than an accrual basis, and that income was properly returned by the petitioners on such basis in each of the years involved. See *Appeal of Max Schott, supra.*

We have not overlooked the contention that since the amount was known approximately and was subject to ascertainment and the peti-

tioners were in control of the company and permitted to draw against their tantiemes, these amounts were constructively received in the years in which earned, on either a cash or accrual basis of reporting income. *Appeal of John A. Brander*, 3 B. T. A. 231. Since it appears that income was properly reported upon an accrual basis, the decision of this question is not involved.

> *Orders of dismissal will be entered as directed. Decision redetermining the deficiencies for the years involved will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE and VAN FOSSAN.
MILLIKEN not participating.